## SUPREME COURT.

### BENJAMIN C. WETMORE, as executor, &c., agt. MARY A. PECK and others.

*Will — Construction of.*

Where a testator devised to his wife his homestead, "with the appurtenances, containing about fourteen and one-half acres of upland, exclusive of the water grant," the words quoted is a general description of the quantity of the upland, not taking into account the extent of the water grant, which was appurtenant to it, and the latter was not intended to be excluded.

Where, at the time of the execution of the will, the premises devised to the wife were unincumbered, and the testator afterward executed a mortgage creating a lien upon the property, the widow must take the lands subject to the mortgage.

Where the testator made a gift to his wife of $50,000, in such securities left by him as she might select, if the securities out of which the legatee may select are inadequate, the residue must be made up by the general assets of the estate, and the bequest is entitled to draw interest from the death of the testator.

Where a gift is made of an equal share of a certain sum to each of several beneficiaries, "or to their respective heirs," and one of the beneficiaries dies in the testator's lifetime, leaving children, the share of such deceased person does not lapse, but goes to his children.

Where a devise of the residue of the estate is made to the widow for life in one clause, and in the following clause such residue is directed to be divided into five equal shares, and given a share each to five beneficiaries named, "or to their respective heirs," in the event that either legatee died in the lifetime of the testator, his or her heirs take the share of the person so dying.

A lapsed legacy, not being in terms excluded therefrom, goes into the residuary, the income of which goes to the widow for life.

The executors being, in addition to a power of sale of the testator's real estate, invested with authority to lease and to mortgage it, and to invest and reinvest the estate in such securities as they may deem proper ; they are also trustees, and as such are invested by implication with the legal title during the life of the widow, and the provisions stated constitute an equitable conversion of the realty into personalty, with the exception of the specific devise to the wife.

Though the legacies are made a charge upon the real estate, such charge does not affect the homestead devised to the wife ; and the power and

authority to sell is paramount to the charge of the legacies, and the lien in favor of the legatees will attach to the proceeds of the sale.

*Special Term, May,* 1882.

*R. E. McCafferty,* for plaintiff.

*Nash & Kingsford,* for defendant Mary A. Peck and others.

*E. L. Fancher,* for defendant Thompson and another.

*W. & S. W. Fullerton,* for defendants Georgia A. Clark and others.

VAN VORST, *J.*— This action is brought by the executors thereof, for the construction of the last will and testament of George H. Peck, deceased. The will bears date the 12th day of August, 1872. The testator died November 1, 1879.

The portions of the will in respect to which questions have arisen, will be considered in the order in which they are presented in the complaint.

By the first clause of his will the testator, in addition to gifts of personal property made to her, devises to his wife his homestead whereon he resided, " with the appurtenances, containing about fourteen and a-half acres of upland, exclusive of the water grant."

The question which is made in respect to this devise is whether the widow is entitled to the upland only, or also to the water grant and land under water, appurtenant to and adjoining the same ?

There can be no reasonable doubt but the water grant, which proceeds from the state, by such grant became annexed to the adjoining land of the grantee. These grants convey rights and privileges of a nature inferior to the fee of the upland, and are properly within the term appurtenances (*Gerard's Title to Real Estate, p.* 715).

I do not think the testator meant to exclude this grant from the operation of the devise, and I apprehend that the words

"fourteen and a half acres of upland, exclusive of the water grant," is a general description of the quantity of the upland, not taking into account the extent of the water grant which was appurtenant to it. This grant is therefore included within the devise to the widow.

At the time of the execution of the will by the testator, the land and premises devised to his wife were unincumbered by mortgage, but afterwards, and on the 1st day of February, 1875, the testator executed a mortgage for $20,000, creating a lien and incumbrance to that amount upon this property, and the question presented is, whether the burden of paying this mortgage rests upon the devisee or upon the executors — or in other words, whether the land is to be taken free of incumbrances, as it existed at the date of the will?

There are cases which hold that the execution by the testator of a mortgage upon lands unincumbered at the date of his will revokes in equity the will *pro tanto* (*Redfield on Wills,* vol. 1, *p.* 342; *Jarman on Wills,* vol. 1, *p.* 151).

But the provisions of the Revised Statutes have settled the law of this state upon that subject (2 *Rev. Stat.,* 65, *sec.* 46).

It is declared, in substance by the statute, that a charge or incumbrance upon real property, for the purpose of securing money, shall not be deemed a revocation of any will relating to the same estate previously executed, but that the devise shall pass and take effect subject to such charge or incumbrance.

And it is also in substance further provided (1 *Rev. Stat.,* 749, *sec.* 4) that whenever any real estate subject to a mortgage executed by any testator shall pass to a devisee, such devisee shall satisfy and discharge such mortgage out of his own property without resorting to the executor of his ancestor, unless there be an express direction in the will that such mortgage shall be otherwise paid.

A testator, for reasons satisfactory to himself, may, after the execution of his will, impress land which he has devised with the lien of a mortgage. He may in this way, rather than by a new testamentary direction, approximate to an equalization

of interests created by his will, although the moneys which he should in this way realize, shall be used for the purpose of improving or appreciating the value of other portions of his estate.

As the will was executed before the mortgage it could not provide for its payment by his executors, but if that had been intended by the testator, the end could have been readily attained by a codicil thereto. There is, therefore, no testamentary direction that the executors should pay the mortgage, or that the devisee should be relieved of its burden. She must, therefore, take the land subject to the mortgage, and must pay the same out of her own funds if she would have it discharged.

By the second clause of his will the testator gave to his wife the sum of $50,000, in such securities left by him as she might select. In the case of *Colgate* agt. *Smith* — lately before me and decided in April, 1880 — a provision in substance similar to this bequest was contained in the testator's will. In that case I held, as I shall now decide, that the gift is not a specific one of securities, but of money. The gift here is of the sum of $50,000, to be satisfied out of the securities left by the testator, if sufficient, for the purpose ; but if these securities, out of which the legatee may select, are inadequate, the residue must be made up by the general assets of the estate.

This legacy may be called demonstrative, as in a general way it points out property from which it may be satisfied ; but the term "securities" is vague and indefinite, and the fact that what in a loose way are called securities should by the executors be called insufficient to satisfy this bequest, should not abridge the amount of the gift which should be realized by the widow to its full extent.

This bequest is entitled to draw interest from the death of the testator (*Enders* agt. *Enders*, 2. *Barb.*, 367; *Hepburn* agt. *Hepburn*, 2 *Brad.*, 74 ; *Parkinson* agt. *Parkinson*, *Id.*, 77; *Williamson* agt. *Williamson*, 6 *Paige*, 278).

By the fourth clause of his will the testator gave to his niece, Laura E. Van Vranken, wife of G. Van Vranken, the sum of $20,000, to be paid for her sole and separate use. But the legatee having died before the death of the testator, this legacy lapses, and falls into the residuary estate of the testator, and passes under the clause of the will which disposes of the residuum, of which something will be hereafter said, when that clause comes to be treated' (*Jackson* agt. *Westervelt*, 61 *How. P. R.*, and cases there cited).

By the fifth clause of his will the testator bequeathed to Howard W. Coates, a nephew of his wife, the sum of $1,000 per annum, to be paid to him in equal quarter yearly payments. This provision being intended, as the testator declared, for the support of his wife's nephew, should be computed from the death of the testator (*Redfield on Sur.*, 587; *Brown* agt. *Knapp*, 79 *N. Y.*, 136; *Booth* agt. *Ammerman*, 4 *Brad.*, 129). A sum sufficient to yield the amount of this annuity must be raised from the personal estate and invested.

By the sixth clause of his will the testator gave the sum of $10,000 to be divided into three equal shares, one of said shares was to be paid to the surviving children of the testator's deceased niece Delia La Forge, another of said shares was to be paid to Benjamin W. Peck, and the other of said shares was to be paid to Cornelia Seeley, " or to their respective heirs."

Benjamin W. Peck, one of the legatees, died in the lifetime of the testator, leaving him surviving three children, and the question is presented, as to whether the share of Benjamin W. Peck lapses, or goes to his children ? and the decision of that question depends upon whether or not the closing words of this bequest, " or to their respective heirs," are words of limitation only.

The word " or " standing in the same relation to the context as it does in this instance, has been sometimes in construction changed into " and." A lapse in such instance was the consequence.

But as is stated in 1 *Jarman on Wills*, 516 (*Biglow's ed.*, 1881) : " The strong tendency of the modern cases certainly is to consider the word " or " as introducing a substituted gift, in the event of the first legatee dying in the testator's lifetime — in other words, as inserted in prospect of and with a view to guard against a lapse." And this learned author cites several cases in support of this conclusion (2 *Redfield on the Law of Wills*, 166 ; *Dayton on Surrogates*, third ed. ; *Williams on Exrs.*, 1088, 1091).

Contrasting the language of this bequest, especially its closing words, which are given above, with the form in which other bequests are made, I am persuaded that the testator used the word " or " in this connection, not inadvertently, but with design, and with the intention of preventing a lapse in the event that either of the legatees should die in his lifetime leaving issue. And the construction which is given to the bequest is that the children of Delia La Forge, who were in being at the death of the testator, take, share and share alike, one-third of this sum of ten thousand dollars ; that the children of Benjamin W. Peck take, share and share alike, another third, and that Cornelia S. Seely takes the remaining third.

By the eighth clause of the will the testator devises and bequeaths to his wife the use and income of all the rest, residue and remainder of his estate, real and personal whatsoever, for her own use and benefit during her natural life ; and the ninth clause provides that, upon the decease of his wife, the testator devises and bequeaths all the rest, residue and remainder of his estate then remaining to be divided into five equal shares ; one of said shares is given to the testator's niece, Laura E. Van Vranken, another of such shares is given to Agnes E. Thompson, another of such shares is given to Cornelia S. Seely, another of such shares is given to Benjamin W. Peck, and the other of such shares is given to Mary C. P. Coates, " or to their respective heirs."

Upon reflection I have come to the conclusion that these

two clauses, the latter of which directly follows the other, and which relate to the residuary estate and its disposition, during the life of the testator's wife, and subsequently thereto, may be read together and without violence as one clause. The subject and its disposition is clearly one.

The lapsed legacy of twenty thousand dollars, above mentioned, is disposed of by the gifts of the residuary estate. "A residuary gift of personal estate carries not only everything not in terms disposed of, but everything that in the event turns out not to be well disposed of. A presumption arises for the residuary legatee against every one except the particular legatee, for a testator is supposed to give away his personalty from the former only for the sake of the latter" (1 *Jarman on Wills* [*Bigelow's ed.*, 1881], 761, 762; *Hawkin's on Wills*, 40; *King* agt. *Strong*, 9 *Paige*, 94; *Banks* agt. *Phelan*, 4 *Barb.*, 80.)

The lapsed legacy, therefore, must constitute a portion of the residuum, the interest or income from which, during the life of the widow, should be paid to her, and the principal sum, after her death, should be divided among those persons to whom the residuary estate is given.

The testator could, by appropriate words, have limited the operation of the residuary clause, and might doubtless have excluded lapsed or void legacies therefrom, but that he has not done (*Betts* agt. *Betts*, 4 *Abb. N. C.*, 418, 420.) The conclusion reached is not in conflict with *Kerr* agt. *Dougherty* (79 *N. Y.*, 330). In that case the gift to his wife by the testator, in the fifteenth clause of his will, was of the income of all his estate after the "legacies are paid," and that clause was considered in connection with the eighteenth, the residuary clause, in determining what was disposed of by the latter. The conclusion reached in that case was that the void legacies were outside the operation of the residuary clause, and that they were not disposed of by the will. But it does not seem to me that there is anything in the will which takes this case

out of the general rule, that lapsed legacies drop into and are disposed of by the residuary clause.

The legatees of the residuum do not take as a class; one-fifth is given to each, "or to their respective heirs," and in the event that either legatee had died during the lifetime of the testator, for the reasons above stated with regard to the bequest contained in the sixth clause, his or her heirs take the share of the person so dying. I am of the opinion that by the terms of the will, notably the tenth clause, the executors are invested with more than a power in respect to the sale and disposition of the testator's real estate. For in addition to a power to sell, they are invested with an authority and a right to lease and to mortgage any of the real estate when necessary, and to invest and reinvest the estate in such securities as they may deem suitable and proper, and to alter and change such investments from time to time, as occasion may require. To meet all these exigencies and demands the executors are trustees, and as such are invested by implication with the legal title for the purposes of the will during the life of the widow (*Tobias* agt. *Ketchum*, 32 *N. Y.*, 319). And under the authority of *Tobias* agt. *Ketchum*, and the other cases there cited, the provisions made in favor of the widow must be considered to have been made in lieu of dower. As a claim of dower would so interfere with and is so repugnant to the provisions of the will, it cannot be enjoyed in addition to the testamentary gifts in the widow's favor (*La Fevre* agt. *Toole*, 84 *N. Y.*, 95). The provisions of the will with respect to the power and authority of the executors in disposing of the real estate, constitute an equitable conversion of the realty into personalty, with the exception of the premises specifically devised to the wife of the testator in the first paragraph of his will.

All legacies which the executors are charged to pay, are expressly made a charge upon the testator's real estate, but such charge does not affect the homestead distinctly given to his wife, and the lien of the legacies must of necessity, as the

Grunberg agt. Blumentahl.

provisions of the will are held to be in lieu of dower, be limited to the remaining real estate of the testator. To satisfy the legacies in full, and in order to meet the other demands of the will in respect to an equal division among the legatees of the residuary estate, an actual conversion into money will be needed, and that, under the power and duty conferred, works an equitable conversion (*Power agt. Cassidy*, 16 *Hun*, 294, 300; *S. C.*, 7 *N. Y.*, 602). The power and authority to sell is, however, paramount to the charge of the legacies, and the lien in favor of the legatees will attach to the proceeds of the sale, and should, if necessary, be satisfied thereout.

The above is an exposition of all the questions raised upon the hearing, and by the briefs of the counsel engaged, and judgment is ordered in pursuance of the above conclusion.