■ In the Matter of the Estate of EVA S. WIGGINS, Deceased. JEREMIAH WOOD, Individually and as Executor of EVA S. WIGGINS, Deceased, Appellant; MICHAEL A. MAZZONE, as Surrogate of the County of Fulton, Respondent. (Proceeding No. 1.) In the Matter of FREDERICK R. STORTECKY, Respondent, v MICHAEL A. MAZZONE, as Surrogate of the County of Fulton, Appellant. (Proceeding No. 2.) [606 NYS2d 423] —Mikoll, J. P. Appeals (1) from a decree of the Surrogate's Court of Fulton County (Mazzone, S.), entered June 23, 1992, which denied a portion of petitioner's application, in a proceeding (No. 1) pursuant to SCPA article 22, for the judicial settlement of a final account, and (2) from a judgment of the Supreme Court (Keniry, J.), entered December 7, 1992 in Fulton County, which granted petitioner's application, in a proceeding (No. 2) pursuant to CPLR article 78, to prohibit respondent from conducting an evidentiary hearing in connection with petitioner's application for judicial settlement of a final account and

to compel said respondent to execute a decree judicially settling said account.

These appeals question whether, in a voluntary proceeding for final settlement of an estate account, Surrogate's Court has the authority, *sua sponte,* to commence an investigation into and to conduct hearings upon the propriety of the estate's administration and the reasonableness of counsel fees claimed when all interested parties waived service of citation and expressly consented to judicial settlement of the accounts as filed.

*Matter of Stortecky v Mazzone* (Proceeding No. 2.)

Following his death on June 24, 1987, the last will and testament of Heinz Schmidt was admitted to probate in Fulton County Surrogate's Court. Under the will, the bulk of Schmidt's approximately $1 million estate was placed in a testamentary trust. Norstar Bank of Upstate N. Y. was named executor of the will and trustee of the trust. Upon completion of the administration process, Norstar commenced a voluntary proceeding for judicial settlement of the final account seeking, among other things, approval of a $36,105.55 executor's commission and $41,000 in counsel fees for the services of the estate's attorney, petitioner Frederick R. Stortecky. Accompanying the application were duly executed consents, general appearances and waivers of citation from all interested parties. In these documents, they each expressly consented to entry of a decree in accord with the accounting, including the requested executor's commission and counsel fees. Believing that the counsel fees were excessive given the small number of assets in the estate (Pepsico stock and Schmidt's personal residence comprised most of the estate) and perceiving other asserted abnormalities, Surrogate's Court commenced a *sua sponte* investigation into the accounting. While the court began simply by requesting copies of vouchers, statements, the estate checkbook and an affidavit of legal services, when unable to obtain satisfaction from these documents it issued an "order to show cause directing an evidentiary hearing". After the first day of hearings, Stortecky commenced the instant CPLR article 78 proceeding in the nature of prohibition seeking to prohibit the inquiry altogether and to compel the court to settle the account as submitted. Supreme Court ultimately granted the requested relief and directed Surrogate's Court to sign a decree judicially settling the final account. Central to this determination was Supreme Court's belief that Surrogate's Court lacked

authority to inquire into the particulars or the propriety of an account when none of the interested parties had filed objections to it. This appeal by the Surrogate ensued.

*Matter of Wiggins* (Proceeding No. 1.)

Eva Wiggins, a Fulton County resident, died testate on September 26, 1989. The principal asset of the approximately $80,000 probate estate was decedent's personal residence, which the will directed be sold and the proceeds poured over into an existing inter vivos trust. Petitioner Jeremiah Wood, an attorney, was named executor. He also was trustee of the trust. In accord with the will's direction, Wood sold the property, a two-family home, to the long-time upstairs tenant for the sum of $39,500. Thereafter, he filed a petition for voluntary settlement of the final account seeking, among other things, to fix his executor's commissions at $4,368.39 and his counsel fees at $7,350. As was the case in the Schmidt estate (proceeding No. 2), duly executed waivers of citation and consents to the account by all interested parties accompanied the petition. Believing that the property may have been sold for less than fair market value, Surrogate's Court *sua sponte* requested that Wood supply further information and ultimately issued an order to show cause directing an evidentiary hearing. While Wood objected, the hearings proceeded as ordered and, at the conclusion thereof, the court found that Wood mishandled the sale of the property and his conduct constituted breach of a fiduciary duty. Accordingly, the court denied Wood both an executor's commission and counsel fees. Further, Wood was surcharged $257.49. He now appeals.

Initially, we note that contrary to the parties' characterization, the issue here is not one of subject matter jurisdiction, that is, whether Surrogate's Court had *jurisdiction* to do what it did, but rather whether it had the *power* to do so. While confusion admittedly exists throughout this area of law, it bears repeating that the two concepts are distinct. Jurisdiction speaks to the court's competence to hear and determine the subject matter in controversy or, put another way, the proceedings over which the court can take cognizance. Power, on the other hand, refers to that which the court can do during the progress of a proceeding over which it otherwise has been accorded jurisdiction *(see generally,* 1 Warren's Heaton, Surrogates' Courts § 15, at ¶ 1 [6th ed]). Here, it is undisputed that Surrogate's Court has subject matter jurisdiction to entertain proceedings for voluntary judicial settlement of an estate account (NY Const, art VI, § 12 [d]; SCPA 201, 2208); the sole question is whether, in connection with such proceedings, it

has the power, *sua sponte,* to take proofs in the absence of any objection or request.

In this regard, it is beyond peradventure that Surrogate's Court can exercise only those powers prescribed by statute and "such incidental powers as are requisite to the execution of the powers expressly given, or to the attainment of justice in the particular cases to which its jurisdiction extends" *(Riggs v Cragg,* 89 NY 480, 489; *see, People ex rel. Safford v Surrogate's Ct.,* 229 NY 495, 497; *Matter of Martin,* 211 NY 328, 330). Here, Surrogate's Court ostensibly premised the power to investigate matters relating to the handling of the estate upon SCPA 2211 and the power to determine the reasonableness of counsel fees upon SCPA 2110.

In our view, the actions of Surrogate's Court in inquiring into the handling of the estate and the items in the account cannot be upheld as authorized under SCPA 2211. That section, which sets forth the procedures to be followed upon an application for voluntary settlement of a judicial account, provides, in pertinent part, as follows: "1. On the return of process issued as prescribed in the preceding section the court must take the account, hear the proofs of the parties respecting it and make such order or decree as justice shall require. 2. The fiduciary may be examined under oath by any party to the proceeding either before or after filing objections, if any, to the account, as to any matter relating to his administration of the estate" (SCPA 2211). Obviously, this statutory language contains no express authorization for Surrogate's Court to act *sua sponte* in inquiring into the particulars of the account or in examining the fiduciary. Rather, it quite plainly limits the court's authority to taking the account and hearing the proofs. Moreover, implicit in our holdings in *Matter of Dolan* (176 AD2d 1019) and *Matter of Veccio* (49 AD2d 380) is that such *sua sponte* authority is neither implied nor incidental to the exercise of the express powers. In both those cases, we expressly recognized that Surrogate's Court lacks authority to refuse to approve a final account where "there is no objection by any interested party and absolutely no indication of any fraud or concealment in obtaining waivers of citation" *(Matter of Veccio, supra,* at 381-382). Quite simply, the lesson to be learned from these cases is that the powers of Surrogate's Court relative to an uncontested, consented-to account are limited to determining the validity of the parties' consents *(see,* 4A Warren's Heaton, Surrogates' Courts § 379, at ¶ 11 [6th ed]). Where, as here, there is no evidence in either of the cases that fraud or concealment was used in obtaining the

waivers and consents of the interested parties, the court's inquiry is at an end.

We reach a different conclusion, however, as to the authority of Surrogate's Court to review counsel fees. Initially, it is clear that under SCPA 2307 (1), Surrogate's Court has express authority to review and fix counsel fees for an attorney-fiduciary such as is involved in proceeding No. 1, and Wood does not dispute this point. Moreover, it is equally evident that the court's authority in this regard is plenary, that is, not dependent upon the existence of an objection to the proposed fee or an affirmative request to set fees *(see,* Turano, 1991 Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 58A, SCPA 2307 [1993 Supp Pamph], at 74-75). The court's authority to act in cases which do not involve attorney-fiduciary situations, however, is less clear. While contrary to the Surrogate's arguments, the power, *sua sponte,* to review fee awards in this context cannot be predicated upon SCPA 2110, inasmuch as a fair reading of the statutory language and the court rules accord the court power to fix fees only upon actual request by an interested party, the fiduciary or the attorney,[*] we nonetheless conclude that the court has such power under its inherent authority. Under SCPA 209 (10), Surrogate's Court is imbued with all the statutory, decisional, implied or inherent powers "that the supreme court would have in like actions and proceedings" *(see generally,* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 58A, SCPA 209, at 213). One of the more well-recognized inherent powers of Supreme Court and of courts in general is the power to supervise the charging of fees for legal services *(see, Matter of First Natl. Bank v Brower,* 42 NY2d 471, 474; *Federal Land Bank v Ambrosano,* 89 AD2d 730, 731; *Matter of Cupid,* 230 App Div 677, 679). Application of these principles leaves little doubt but that, whether by operation of SCPA 209 (10) or otherwise, inherent authority exists in Surrogate's Court to review counsel fees. Significantly, such authority has been recognized in situations which are factually indistinguishable

---

[*] SCPA 2110 provides, in pertinent part: "1. At any time during the administration of an estate and irrespective of the pendency of a particular proceeding, the court is authorized to fix and determine the compensation of an attorney for services rendered to a fiduciary or to a devisee, legatee, distributee or any person interested or of an attorney who has rendered legal services in connection with the performance of his duties as a fiduciary or in proceedings to compel the delivery of papers or funds in the hands of an attorney. 2. The proceeding shall be instituted by petition of a fiduciary of the estate or a person interested or an attorney who has rendered services."

from the cases at bar *(see, e.g., Matter of Bobeck,* 196 AD2d 496; *Matter of Kelly,* 187 AD2d 718; *Matter of Zorek,* 131 AD2d 580). Under this authority, like that under SCPA 2307, Surrogate's Court need not accept at face value an attorney's summary of the hours expended, but can review the record independently and conduct hearings if necessary *(Matter of Kelly, supra,* at 719).

Based upon the foregoing, we conclude in proceeding No. 2 that Supreme Court erred to the extent that it prohibited Surrogate's Court from inquiring into the reasonableness of counsel fees charged. With regard to proceeding No. 1, inasmuch as the decision by Surrogate's Court to deny counsel fees altogether was based not upon any perceived excessiveness or impropriety but solely upon the finding that the attorney-fiduciary breached his fiduciary duty in administering the estate, which finding it lacked authority to make, the matter must be remitted for substantive evaluation of the counsel fee request.

Mercure, Casey and Yesawich Jr., JJ., concur. Ordered that the judgment in proceeding No. 2 is modified, on the law, without costs, by reversing so much thereof as prohibited respondent from conducting a hearing on the issue of counsel fees and directed entry of a decree awarding counsel fees in the amount of $41,000, and, as so modified, affirmed. Ordered that the decree in proceeding No. 1 is reversed, on the law, without costs, and matter remitted to the Surrogate's Court of Fulton County for further proceedings not inconsistent with this Court's decision.