In the Matter of the Estate of HELENA M. LIELL, Deceased.

Surrogate's Court, New York County, June 28, 1933.

*Wingate & Cullen,* for the petitioner.

*Samuel W. Lowenberg,* for the administratrices.

FOLEY, S. (1) The principal dispute in this contested accounting proceeding arises over the payment to Samuel W. Lowenberg, the attorney for the administratrices, of fifty per cent of the gross estate under a contingent retainer signed by them. The sole asset of the estate consisted of a bank deposit amounting to $6,500. The attorney has been paid $3,250, under his contingent agreement. There are three next of kin, a sister and two nieces of the decedent, each entitled to one-third of the estate. It appears that the attorney was originally retained by two of the next of kin — the sister and a niece. The other niece is the objectant here. She claims that the amount paid to the attorney is unreasonable and excessive, and requests the surrogate to fix reasonable compensation.

It is undisputed that the attorney procured from the sister and niece of the decedent, in their individual capacity, a written agreement to pay him one-half of whatever each realized from the estate. These agreements were signed respectively on July 1, 1931, and August 1, 1931. The attorney claims to have rendered certain services in recovering the bank deposit for the estate before and after the dates of these written retainers. It has been established to my satisfaction from the testimony of Mr. Brady, the attorney for the Mercantile Bank and Trust Company, in which the fund was deposited in the name of the decedent, that a settlement of $6,500 was made on October 13, 1931, between him, representing the bank, and Lowenberg, as attorney for the two next of kin whom he represented personally. The only formalities thereafter to be performed were the appointment of the administratrices in this court and the presentation of the necessary and customary papers required in such transactions, viz., a waiver from the State Tax Department and a certificate of letters of administration. The bank also required a bond to be given to it because of the fact that the account had been dormant for some twenty years. On November 5, 1931, the attorney applied for the appointment of the clients,

whom he had represented individually, as administratrices of the estate. They were appointed by decree made on that date and letters issued to them. On the 6th day of November, 1931, the day after the issuance of letters, the attorney procured a written retainer from the administratrices in their representative capacity. In it they agreed to pay him one-half of the amount collected from the bank and thereby they attempted to charge that percentage against the share of the objectant here. The settlement was closed on November 11, 1931, less than one week after the issuance of letters, by the delivery of a check for $6,500 to the order of the estate. Lowenberg has received out of the proceeds of that check as against the gross share of the objectant the sum of $1,083.33. This amount is more than she herself would receive if his fee were permitted to stand, since commissions and administration expenses and other charges necessarily tend to reduce her share of the gross estate.

It should be noted also that the attorney made frequent efforts to obtain the signature of the objectant to a contingent retainer and that she refused to sign any such agreement either for fifty per cent or any other percentage of the fund.

In *Matter of Reisfeld* (227 N. Y. 137) the Court of Appeals defined the law applicable to contingent agreements made by an attorney with an administrator. (See, also, *Matter of Meng*, 227 N. Y. 264; *Matter of Gilman*, 251 id. 265.) Such an agreement, in the absence of fraud or mistake, is binding only upon the person who signs the agreement. It is in no way binding upon the non-assenting next of kin. A distributee who does not sign the retainer is free " because she did not assent, and hence the contract must be reasonable when it imposes a charge upon her right." (*Matter of Reisfeld, supra.*) What is a reasonable charge for the attorney's services as against the share of a non-assenting next of kin is for determination by the appropriate court. In the present case the proceeds of the collection belonged in equal shares to the three next of kin. Upon their own interest the two administratrices, either by their individual agreement or the retainer signed by them in their representative capacity, could, in the absence of fraud or mistake, impose any lien that they pleased. Upon the interest of the objectant, the third next of kin, they " could not lay a charge beyond the limits of the reasonable." (*Matter of Reisfeld, supra*, per CARDOZO, J.)

There were no extraordinary circumstances in the pending case which would justify the unreasonable and exorbitant fee paid to the attorney. The bank account had been advertised in newspapers in New York city as a dormant account in the name of the decedent. The discovery of the account did not originate with the attorney,

but with one of the administratrices. The bank was at all times willing to pay the original deposit of $3,500. The only dispute which arose was as to the period over which interest should be paid. Up to the time of the final settlement of the claim on October 13, 1931, the attorney represented his individual clients, and not the estate or the objectant. After that date the collection of the amount of the settlement was relatively simple and involved no greater service than that required in the collection of a bank account by an administrator in an ordinary estate. The services rendered to the administratrices in the collection of the fund covered a period of approximately one week from the time of the preparation of the petition for letters of administration to the date of the actual collection. At the time of the signing of the contingent agreement by the representatives of the estate, no uncertainty existed either in the collection itself or in the amount to be collected from the bank. Under such circumstances the procurement of a contingent retainer from an administrator is unethical, unconscionable and an imposition upon the beneficiaries of the estate.

The attorney has separately charged the additional amount of $375 for his general administration services. I find that, as against the objectant, this was a maximum reasonable charge for all of his services, including the collection of the funds from the bank. The administratrices will, therefore, be surcharged in the sum of $1,083.33 improperly paid to the attorney out of the share of Anna B. Manning, the objectant. Fortunately, few cases of this character occur and the charges of attorneys in the great majority of estates are moderate and reasonable. But when an exceptional case of imposition and exorbitant charge is disclosed to the surrogate, it should be properly characterized and condemned. The conduct of an attorney in a simple estate who demands and collects an exorbitant fee tends to bring discredit upon the profession generally and gives to laymen an erroneous impression of the cost of the administration of estates.

While the primary liability for this surcharge is against the administratrices and the surety on their bond, there appears to be a method of recovering the excessive amount paid to the attorney in a proper proceeding initiated by service of process upon him to compel restitution to the estate. (*Matter of Dollar*, 103 Misc. 137, 142; affd., *sub nom. Matter of Hulett*, 194 App. Div. 948; affd., 231 N. Y. 545; *Matter of Bucken* v. *Busch*, 203 App. Div. 717; *Matter of Anderson*, 136 Misc. 110; revd. on other grounds, 232 App. Div. 704; affd., 257 N. Y. 592; *Matter of Balazs*, 147 Misc. 95.) In *Matter of Bucken* v. *Busch* the Appellate Division, First Department, Mr. Justice FINCH writing, sustained the right of a court to

compel restitution from an attorney who had been guilty of " over-reaching rapacity."

The representatives of the estate have not objected to the fifty per cent contingent fee charged out of their own shares, although from the decision of the Appellate Division, Second Department, in *Matter of Pieris* (82 App. Div. 466), it would appear that under the special circumstances of this estate the contingent agreement was not binding as against them, but was subject to a determination as to whether the compensation was reasonable. In the *Pieris* case the attorney located a certain bank deposit belonging to the decedent. He thereupon solicited the sole next of kin who signed a contingent agreement for one-third of the fund. He did not make a full disclosure of the facts which he knew, nor did he afford the client an opportunity for reasonable investigation or an opportunity to obtain independent advice. The rate fixed in the agreement was held not to be conclusive but it was within the power of the court to fix the reasonable compensation. In any event objection has not been raised by the next of kin (other than the objectant) in this proceeding.

(2) The administratrices will also be surcharged with the sum of $108 paid to an attorney in New Jersey for services alleged to have been rendered by him. It appears that he had been first retained by Mrs. Mager, the administratrix, and had brought his associate, Mr. Lowenberg, into the estate and received half of the fee paid to the latter. None of the assets was located in New Jersey, no litigation was involved in that State and no act of administration was necessary to be performed in that State. The fact that one administratrix lived in New Jersey did not justify this expenditure. Under these circumstances, the payment of a fee to a New Jersey attorney for services in an estate exclusively administered in New York, was unauthorized and improper.

(3) The claim of Anna B. Manning for the payment of the funeral expenses is allowed in the sum of $396.50.

(4) The personal claim of Helene L. Cochrane is disallowed. Submit decree on notice settling the account accordingly.